UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PHILADELPHIA ENTERTAINMENT | : | Civil Action No. 2:16-cv-1992 |
| AND DEVELOPMENT PARTNERS, LP, | : | Bankruptcy No. 14-12482 |
| *d/b/a* FOXWOODS CASINO PHILADELPHIA | : | Adversary No. 14-00255 |

**O P I N I O N**
Appeal of Bankruptcy Court's Order dated April 8, 2016- Affirmed

**Joseph F. Leeson, Jr.**                                                                  **March 28, 2017**
**United States District Judge**

## I.   INTRODUCTION

This case presents cross bankruptcy appeals filed by Persil Manguer LLC, in its capacity as the trustee of the Liquidation Trust created under the First Modified Chapter 11 Plan of Liquidation of the Debtor Philadelphia Entertainment and Development Partners, LP, d/b/a Foxwoods Casino Philadelphia, and by the Commonwealth of Pennsylvania Department of Revenue and Commonwealth of Pennsylvania (collectively "Commonwealth") from the Order entered April 8, 2016, by the United States Bankruptcy Court for the Eastern District of Pennsylvania.  Upon de novo review, the bankruptcy court's opinion is affirmed and adopted. The cross appeals are denied.

## II.   BACKGROUND[1]

### A.   Gaming License and Revocation

On December 20, 2006, the Pennsylvania Gaming Control Board awarded one of two slot machine licenses to the Debtor.  Due to unexpected delays and the inability to secure financial backing, the Debtor was not able to open its casino within one year, as required.  The Debtor's

---

[1] The following undisputed facts are taken from the parties' briefs and the Bankruptcy Court record.  *See* ECF Nos. 7-16; *Phila. Entm't & Dev. Partners, L.P. v. Pennsylvania Dep't of Revenue (In re Phila. Entm't & Dev. Partners, L.P.)*, 549 B.R. 103 (Bankr. E.D. Pa. 2016).

1

y
w

request for an extension of time to pay the license fee of $50 million was denied, and it paid the fee in October 2007.  However, the Debtor sought and received an extension of time to commence operations until May 2011.  In granting an extension, the Gaming Board imposed conditions upon the Debtor, including milestone deadlines and daily fines when they were not met.  The Debtor was unable to meet these conditions, and on December 23, 2010, the Gaming Board issued a revocation order, revoking the Debtor's license for financial unsuitability, for failing to commence construction of the casino, and for failing to comply with the Gaming Board's orders.  The Commonwealth did not return any part of the $50 million license fee.

The Debtor appealed the revocation order to the Commonwealth Court.  The limited issues on appeal were: (1) whether the Board committed reversible error by applying an incorrect legal test to determine that the Debtor violated conditions of its license; (2) whether the Board committed reversible error by applying unconstitutionally vague standards as the basis for revoking the Debtor's license; and, (3) whether the Board violated the Debtor's due process rights by revoking its license via summary judgment without conducting an evidentiary hearing and without providing more discovery.  *Phila. Entm't & Dev. Partners, L.P. v. Pa. Gaming Control Bd.*, 34 A.3d 261, 263 (Pa. Commw. Ct. 2011).  In support of the third issue, the Debtor argued:

> (1) [the Board] entered summary judgment against PEDP without conducting an evidentiary hearing and reviewing the evidence in a light most favorable to PEDP; (2) the Board's determination was not supported by the record; (3) the Board denied PEDP discovery necessary to support its motion for summary judgment; and, (4) the Board imposed an excessive sanction.

*Id.* at 275.  The Commonwealth Court affirmed the revocation order.  *Id.* at 279 (finding that the Gaming Board applied the correct test in deciding whether the license should be revoked, that the revocation guidelines were not unconstitutionally vague as applied, that the Debtor was given the

opportunity to be heard, that there was evidence to support the Gaming Board's decision, and that revocation of the $50 million license was not an excessive sanction).[2]  This decision became final on April 14, 2012.

### B.      Bankruptcy Proceedings

On March 31, 2014, the Debtor filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania.  In April 2014, the Debtor made a demand upon the Commonwealth for the return of the license fee.  The Commonwealth refused.

On May 29, 2014, the Debtor filed an adversary complaint against the Commonwealth, seeking to avoid the license revocation and demanding payment of $50 million, which it claimed was property of the bankruptcy estate.  The Debtor asserted bankruptcy claims for turnover (Count I) for the Commonwealth's failure to return the license fee, and for fraudulent transfer (Counts II – IV), arising from the Commonwealth's revocation of the license and failure to provide the reasonably equivalent value for the license after it was revoked.  The Debtor also asserted claims for unconstitutional taking (Count V), and for unjust enrichment and promissory estoppel (Counts VI-VII, state law claims).

The bankruptcy plan was thereafter confirmed and the Trustee succeeded to all claims belonging to the Debtor.

---

[2]      In reviewing the revocation order, the Commonwealth Court considered the license fee to be nonrefundable.  *See Phila. Entm't & Dev. Partners, L.P.*, 34 A.3d at 275-80 (rejecting the Debtor's claim that revocation of the $50 million license was unreasonably harsh, and finding that lesser sanctions, such as the previously imposed monetary sanctions amounting to more than $650,000 in fines, were not available); *Id.* at 281 ("Moreover, as counsel for PEDP noted at argument, by revoking PEDP's License, PEDP will be required to forfeit a $50 million licensing fee paid to the Board. By affirming the Board's final order, the Majority, in essence, confirms the application of a summary forfeiture process with regard to a sizable property interest ($50 million fee), without a hearing." (McCullough, J., dissenting)).

On April 8, 2016, the bankruptcy court dismissed the adversary complaint. *In re Phila. Entm't & Dev. Partners, L.P.*, 549 B.R. 103. The court concluded that: (1) the Trustee failed to state a claim for turnover pursuant to § 542 and, to the extent the actions implicated some transfer other than the revocation of the license, a claim for fraudulent conveyance; (2) application of the Rooker-Feldman Doctrine[3] divested it of subject matter jurisdiction to consider the avoidance of the revocation of the license; and (3) sovereign immunity deprived the court of subject matter jurisdiction to hear the Trustee's non-bankruptcy causes of action. *Id.* at 111. The court declined to address the Commonwealth's request for alternative relief based upon permissive abstention pursuant to 28 U.S.C. § 1334(c)(1) or the Burford abstention doctrine.[4] *Id.* The court also refused to determine whether sovereign immunity applies to the fraudulent conveyance claims. *Id.* at 134-35.

### C. Appeal

The Trustee appeals from the April 8, 2016 order entered by the bankruptcy court dismissing the fraudulent transfer claims at Counts II, III, and IV. The Trustee argues that the

---

[3] Rooker-Feldman divests the federal courts of subject matter jurisdiction to adjudicate a complaint of injury caused by a state-court judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that the Rooker-Feldman Doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166-70 (3d Cir. 2010) (outlining Rooker-Feldman's four requirements and explaining that claims that meet these four requirements have generally been described as either: (1) having been actually litigated in the state court; or (2) inextricably intertwined with the state-court adjudication). The Rooker-Feldman Doctrine is named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[4] "The Burford abstention, first enunciated by the Supreme Court in *Burford v. Sun Oil Co.*, 319 U.S. 315, 87 L. Ed. 1424, 63 S. Ct. 1098 (1943), . . . held that federal courts should exercise equitable discretion and refrain from exercising authority over questions involving basic problems of state policy pertaining to the regulation of important state natural resources, even if federal court jurisdiction is predicated on diversity of citizenship." *Grode v. Mutual Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 956 (3d Cir. 1993).

bankruptcy court misconstrued its fraudulent transfer claims as a challenge to the revocation of the license itself. The Trustee also asserts that the bankruptcy court erroneously perceived the pre-petition Debtor's claims to be the same as the Trustee's, and misapplied Rooker-Feldman to Counts II, III, and IV.[5]

The Commonwealth filed a cross-appeal, asserting that the bankruptcy court's order can be affirmed on the alternative ground that the Commonwealth is immune from the Trustee's fraudulent transfer claims pursuant to the Eleventh Amendment.

### III.    STANDARD OF REVIEW

On appeal, a district court reviews a bankruptcy court's findings of fact applying a "clearly erroneous" standard of review. *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). A district court reviews the bankruptcy court's legal determinations de novo. *Sovereign Bank v. Schwab*, 414 F.3d 450, 452 (3d Cir. 2005).

### IV.    ANALYSIS[6]

#### A.    The bankruptcy court correctly construed the Debtor's bankruptcy claims.

The Trustee argues that the bankruptcy court erred in characterizing the fraudulent transfer claims as a challenge to the legitimacy of the revocation of the Debtor's license. The Trustee asserts that, instead, the claims accept and are premised on the revocation, and challenge only the Commonwealth's failure to return the value of the license after its revocation. The adversary complaint states: "The revocation of the License was a transfer for which the Debtor

---

[5] The Trustee's appeal does not challenge the bankruptcy court's dismissal of Counts I, V, VI, or VII.

[6] After careful consideration of the parties' arguments and of the record, and after applying de novo review, this Court concludes that the bankruptcy court's decision was correct and therefore adopts Judge Coleman's well-reasoned opinion. This Court writes separately only to address a few of the issues raised in the parties' appeals. *See In re Kasco*, No. 07 C 7270, 2008 U.S. Dist. LEXIS 123993, at *1-2 (N.D. Ill. Aug. 14, 2008) (affirming and adopting, without separate opinion, the bankruptcy court's opinion).

received no value from the Commonwealth (the "Transfer")." *See* Adversary Compl. ¶ 97, No. 14-bk-12482 (May 29, 2014), ECF No. 104.

After review, this Court concludes that the bankruptcy court did not misconstrue the claims.

Prior to issuing the order that is the subject of this appeal, the bankruptcy court held oral argument and the following exchange occurred between the Honorable Magdeline D. Coleman and Stephen A. Cozen, counsel for the Debtor:[7]

> THE COURT: All I'm trying to establish, and I've got my answer. In order to get to where you want me to get, I have to make a finding that the revocation was a fraudulent transfer. It was a fraudulent transfer because it was revoked, and you didn't to get something in return.
>
> MR. COZEN: Exactly.

N.T. 15:1-6, No. 14-bk-12482 (Nov. 14, 2014), ECF No. 188. This discussion shows that the bankruptcy court did not misunderstand the claims.

The bankruptcy court's written opinion further confirms that the court did not misconstrue the claims. *See In re Phila. Entm't & Dev. Partners, L.P.*, 549 B.R. at 112 ("The claims against the Commonwealth Parties may be boiled down to the Debtor's, and now the Trustee's, belief that the revocation of the License was unlawful because revocation was not accompanied by a refund of the License Fee.").[8]

---

[7] Attorney Cozen also represents the Trustee.

[8] Although the bankruptcy court clearly understood the claims, it nevertheless considered the claims under other possible readings of the adversary complaint: (1) as seeking avoidance of the revocation of the license based on the Commonwealth's subsequent failure to refund the license fee; (2) as seeking avoidance of the payment of the license fee based on the Commonwealth's failure to refund the fee after revocation of the license; (3) as seeking a refund of the license fee; and/or (4) as seeking a judgment in an amount equal to the value of the license based on its revocation. *See In re Phila. Entm't & Dev. Partners, L.P.*, 549 B.R. at 111 ("To the extent that the fraudulent conveyance actions implicate some transfer other than the revocation of the License, this Court has also determined that the Trustee failed to state plausible claims for

The Trustee's appeal on this basis is denied.

**B. Rooker-Feldman bars federal review of any claims seeking to avoid revocation of the license, as the bankruptcy court correctly determined.**

The Trustee contends that the bankruptcy court erred in holding that the fraudulent transfer claims are barred by Rooker-Feldman.

Significantly, the bankruptcy court determined that Rooker-Feldman prevented it from considering only whether the license was properly revoked, which is one of the possible constructions of the allegations. *See* Footnote 7 herein. "To the extent the Bankruptcy Claims do not attempt to undo the revocation of the License, [the bankruptcy court] concluded that it may hear and issue a final order adjudicating the Bankruptcy Claims." *In re Phila. Entm't & Dev. Partners, L.P.*, 549 B.R. at 117. Many of the Rooker-Feldman arguments raised by the Trustee on appeal are therefore misplaced. To the extent that the appeal appropriately challenges the court's decision, the arguments have been reviewed and are denied. As previously stated, this Court adopts the opinion of the bankruptcy court and will not write separately on all issues.

---

relief...."); *Id.* at 117 ("To the extent the Bankruptcy Claims do not attempt to undo the revocation of the License, this Court has concluded that it may hear and issue a final order adjudicating the Bankruptcy Claims.") *Id.* at 139 ("To the extent the Trustee alleges that some interest in the License inured to the benefit of the estate, the Trustee would be complaining of injuries caused by the Revocation Order that was subsequently confirmed by the Commonwealth Opinion."); *Id.* at 142, 151, 154 ("[T]o the extent that the Trustee has characterized its turnover action and fraudulent conveyance actions as implicating something other than any loss of value caused by the revocation of the License, this Court will address whether the Trustee has managed to state a plausible theory of relief with regard to the Debtor's entitlement to a refund of the License Fee."). These alternative readings are supported by the allegations in the adversary complaint. *See id.* at 151-52 (discussing the different ways in which the claims could be characterized); *compare* Adversary Compl. ¶¶ 47, 49, 54, 57-58, 65-69, 95-97, 104, 110, 114, *with* ¶¶ 73-74, 81, 102, 109, No. 14-bk-00255. The Trustee's attempt to discredit the bankruptcy court's opinion for analyzing so-called "hypothetical claims that have not been raised" is unfounded because it was the nature of the pleadings that caused the court to determine that the Debtor may have been attempting to raise additional claims. Moreover, the bankruptcy court went out of its way to provide the Debtor with a thorough review by discussing all possible claims, including the ones as alleged by the Trustee.

This Court will comment, however, that contrary to the Trustee's assertion that it was not the losing party in state court, but rather the Debtor lost in state court, the adversary complaint was filed by the Debtor. Furthermore, the Trustee is simply the Debtor's successor-in-interest. *See Carr v. 19-21 N. George LP (In re 19-21 N. George, Inc.)*, No. 1:09-bk-03080MDF, 2011 Bankr. LEXIS 1809, at *8-9 (Bankr. M.D. Pa. May 13, 2011) (concluding that Rooker-Feldman barred the trustee, as the debtor's successor-in-interest, from challenging a state court judgment against the debtor). The Trustee's reliance on *McNamara* for the position that the bankruptcy court erred in failing to distinguish it from the Debtor is not persuasive because in that case the trustee was appointed in the place of the "bad actor" debtor and the trustee's appointment was only "pivotal" because the trustee came to the court "with clean hands." *See McNamara v. PFS (In re Personal & Bus. Ins. Agency)*, 334 F.3d 239, 245 (3d Cir. 2003). There is no evidence here that the Debtor acted in bad faith regarding the property.

The appeal arguments based on Rooker-Feldman are denied.

### C.     The Trustee failed to state a fraudulent conveyance claim.

The Trustee, relying in part on its arguments that the bankruptcy court misconstrued its claims and erred in applying Rooker-Feldman, asserts that the bankruptcy court incorrectly assumed that the only possible transfer it could consider was the Debtor's payment of the license fee in 2007. The Trustee also contends that the court misapplied the *Twombly-Iqbal*[9] standard of review.

Upon de novo review, this Court concludes that the bankruptcy court, applying the proper standard of review, correctly determined that there were only two "transfers" by the Debtor of its property: (1) the Debtor's transfer of $50 million as payment for the license in 2007; and (2) the

---

[9]     *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Debtor's transfer of the slot machine license upon revocation, which was final on April 14, 2012. The court explained that the Trustee cannot state a claim based on either transfer because the first transfer occurred beyond the statute of limitations and Rooker-Feldman bars review of the second transfer. The bankruptcy court also properly rejected the Trustee's contention that another "transfer" occurred on April 14, 2012, when the Debtor's license was revoked and the Commonwealth did not give any reasonably equivalent value. *See In re Phila. Entm't & Dev. Partners, L.P.*, 549 B.R. at 152 ("The Commonwealth's subsequent retention of the License Fee after revocation may not be considered a 'transfer' simply because the Trustee believes applicable law entitles the Debtor to a refund.").

Pursuant to 11 U.S.C. § 101(54)(D), the term "transfer" is to defined to mean "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of *disposing of or parting with*-- (i) property; or (ii) an interest in property." A cause of action for fraudulent conveyance allows a trustee, under certain conditions, to "avoid any transfer of an interest of the debtor in property." 11 U.S.C. §§ 544(b)(1), 548(a)(1)(B). The statutes "presume that a 'transfer' requires that there be a 'transferee' that receives the property interest conveyed from the debtor." *See Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*, 716 F.3d 736, 762 (3d Cir. 2013).

As the bankruptcy court discussed, the Debtor disposed of or parted with his $50 million in 2007, and his license in 2012. However, contrary to the Trustee's claim, the Debtor did not dispose of or part with any other property or interest in property in 2012. The Trustee, stating that this Court should accept that the license was validly revoked, contends that "the question here is what happens next once the Debtor has exhausted all challenges to the loss of the License." Trustee's Brief 19, ECF No. 9. The answer to that question explains the basis for the

9

bankruptcy court's dismissal of the fraudulent transfer claims: once all challenges to the loss of the license were exhausted, there was no transfer to be avoided. Following revocation, the Debtor did not dispose of or part with any property or any interest in property.

For these reasons, and for those more fully explained by the bankruptcy court, the fraudulent transfer claims fail as a matter of law.

The Trustee's appeal is denied.

### D. Immunity

In its cross-appeal, the Commonwealth asserts an alternative basis to affirm the bankruptcy court's order: that the Trustee's fraudulent conveyance claims are foreclosed by its Eleventh Amendment Immunity.

Having decided to affirm the bankruptcy court's order, this Court denies the Commonwealth's appeal as moot.

### V. CONCLUSION

After de novo review, this Court concludes that the bankruptcy court correctly determined that Rooker-Feldman bars review of the fraudulent transfer claims to the extent that they seek review of the revocation of the Debtor's slot machine license and, to the extent the claims seek to avoid another alleged transfer, that they fail to state a claim. The court clearly understood the claims and applied the proper standard of review. The bankruptcy court's opinion dated April 8, 2016, is adopted herein and is affirmed. An appropriate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge